IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN G. WATTS, | : | |
| Petitioner, | : | |
| v. | : | CIVIL ACTION |
| | : | NO. 15-3740 |
| LAWRENCE MAHALLY et al., | : | |
| Respondents. | : | |

Jones, II      J.                                                     September 30, 2016

## <u>MEMORANDUM</u>

John G. Watts ("Petitioner") has filed *pro se* objections, (Dkt No. 13 [hereinafter Objs.]), to the Report and Recommendation ("R&R") of the Honorable Richard A. Lloret, United States Magistrate Judge. (Dkt No. 11 [hereinafter R&R].) The Government did not respond to said objections. After filing objections, Petitioner requested leave to amend his habeas Petition. (Dkt No. 15.)

Upon consideration of Petitioner's Petition, (Dkt No. 1 [hereinafter Pet.]), the Government's Response thereto, (Dkt No. 10 [hereinafter Resp.]), and the full record, the Court overrules in part, and grants in part, Petitioner's objections. The Court dismisses claims One and Four; but grants an evidentiary hearing as to Claims Two and Three.  Further, the Court denies Petitioner's request to amend his Petition. Finally, the Court grants Plaintiff counsel.

I.      **Background**

        a.  **Underlying Facts**

The Report and Recommendation relied on the factual recitation of the Superior Court on

direct appeal. (R&R at 1-2.) Petitioner did not object to the recitation of facts. The Court adopts

the following factual record:

> On July 7, 2007 at about 4:15 p.m., Nicholas Harris (Harris) was waiting for a commuter
> train at the Wayne Junction Station in the Germantown section of Philadelphia. Harris
> was approached by [Watts] and co-conspirator Dontay Hughes (Hughes). [Watts]
> grabbed Harris' cell phone and made a call while demanding $20.00 from Harris. Harris
> asked [Watts] and Hughes whether they would leave him alone if he gave them the
> $20.00. When [Watts] replied yes, Harris gave him $20.00, [Watts] returned the phone,
> and the parties separated to different areas of the station.
>
> A few minutes later, [Watts] and Hughes re-approached Harris and, with each placing a
> hand on one of Harris' shoulder, [Watts] demanded the rest of Harris' money. Hughes
> also alluded to a "burner" on his hip and threatened to shoot Harris if he did not comply.
> Harris observed a bulge on Hughes' hip which he assumed was a handgun. Harris turned
> over his wallet to [Watts] who removed $80.00 in cash and returned the wallet. [Watts]
> and Hughes then left the scene. Harris returned home and called the police.
>
> Officer Mitchell Yanak of the Philadelphia Police Department responded and, with Harris
> in his vehicle, cruised the neighborhood around the station in hope of spotting the
> perpetrators. Harris identified [Watts] and Hughes at the corner of 20th Street and
> Windhocking Street, about two blocks from the station. [Watts] and Hughes split up,
> fleeing with [Watts] running south on 20th Street. Officer Yanak pursued [Watts], who
> entered an abandoned building. [Watts] jumped out of a second story window of the
> building and was subdued after a brief struggle with police. [Watts] was transported to a
> hospital and then to the 35th Police District for arraignment.
>
> After being arraigned, at about 6:05 a.m. on July 29, 2007, [Watts] called Harris' cell
> phone from the police district. According to Harris' testimony, [Watts] twice told Harris,
> "young boy, you don't want to do this." [Watts] identified himself as "the boy who
> robbed you," and Harris recognized [Watts's] voice. On July 30, 2009, [Watts] attempted
> to place two more calls to Harris from the county prison but the calls did not go through.

*Comm. v. Watts*, 619 EDA 2009, slip op. at 2-3 (Pa. Super. Apr. 21, 2010). During Petitioner's

initial proceedings, he was represented by Vincent Corrigan, Esq. and Robert Jovanov, Esq. of

the Defender Association, who had to withdraw due to a conflict of interest; Petitioner was

represented by John P. Cotter, Esq. at trial (collectively "Trial Counsel").

2

On November 14, 2008, a jury sitting before the Honorable Chris R. Wogan in the Court of Common Pleas of Philadelphia County convicted Petitioner of robbery, criminal conspiracy, terroristic threats, intimidating a witness, and criminal use of a communication facility. The jury acquitted Petitioner of the charges of carrying a firearm without a license and possession of an instrument of crime.

Judge Wogan sentenced Petitioner to twenty four and a half to fifty years and two months in prison. Petitioner timely filed post-sentence motions, which were denied.

### b.  Motion for Judgment of Acquittal and Direct Appeal

On March 4, 2009, Petitioner timely filed a notice of appeal. (Pet'r's 1925(b) Direct App. Statement.)  In his 1925(b) Statement, Petitioner alleged (1) that the Trial Court erred in not dismissing the charges for violations of Petitioner's speedy trial rights under Pa. R. Crim. P. 600, (2) that the Trial Court erred in not granting Petitioner's pretrial motion to quash the Intimidation of a Witness charge as a first degree felony, (3) that the Trial Court erred in refusing to include a proposed jury instruction of the lesser included offense of third-degree robbery (while only reading the instruction for second-degree robbery), (4) that the prosecutor committed misconduct in his closing argument, and (5) that the Trial Court erred in providing a supplemental instruction to the jury, after closing argument, regarding the co-Defendant's possession of a weapon during the commission of a subsequent, unrelated crime,  (Pet'r's 1925(b) Direct App. Statement, Apr. 6, 2009.) On August 12, 2009, Judge Wogan held that Petitioner's claims were without merit. *Comm. v. Watts*, CP-51-CR-9464-2007, CP-51-CR-10470-2007, slip op. (Ct. Comm. Pl. Aug. 12, 2009).

On April 21, 2010, the Superior Court affirmed Petitioner's judgment and sentence. *Comm. v. Watts*, 619 EDA 2009 (Super. Ct. Apr. 21, 2010). Of note to these proceedings, the

Superior Court found that Judge Wogan's supplemental instruction was an abuse of discretion, but that Petitioner did not suffer any prejudice as he was, in fact, acquitted of the Possession of an instrument of crime and Violation of the Uniform Firearm Act charges. *Id.* at 22-23.

Further, the Superior Court found that the Trial Court's application of the Deadly Weapons Enhancement pursuant to 204 Pa. Code § 303.10 was appropriate. *Id.* at 27-28. The Superior Court "conceded that [Petitioner] had no firearm on his person during the commission of the offense." *Id.* However, the Superior Court found that the record supported a finding that Petitioner's co-defendant had a firearm that was within the immediate physical control of Petitioner. *Id.* at 29. The Superior Court explained that the circumstantial evidence including Hughes's statement to the victim that Hughes possessed a "burner" and would shoot him, victim's observation of a "bulge" on Hughes's hip which he assumed was a handgun, and Petitioner's proximity and co-operation with Hughes support a finding, by a preponderance of the evidence, that a firearm was within Petitioner's "immediate physical control." *Id.* at 29. The Pennsylvania Supreme Court denied discretionary review on March 1, 2011.

### c.  Petitioner's Pennsylvania Post Conviction Relief Act Suit

Petitioner timely filed a Post-Conviction Relief Act ("PCRA") Petition. Petitioner alleged that Trial Counsel was ineffective during the course of pretrial plea bargaining. (Pet'r's PCRA Pet. ¶ 21, Feb. 29, 2012.) During the PCRA proceedings, Petitioner was represented by Robert J. Levant ("PCRA Counsel"). On December 26, 2012, Judge Wogan sent Petitioner Notice pursuant to Pennsylvania Rule of Criminal Procedure 907 that the PCRA Petition would be dismissed as meritless. A hearing was held on June 10, 2013. The Petition was dismissed at the end of the hearing.

On July 5, 2013, Petitioner filed a Notice of Appeal. On August 19, 2013, Judge Wogan held that Petitioner's PCRA appeal should be denied. *Comm. v. Watts*, CP-51-CR-10470-2007, CP-51-CR-9464-2007, slip op. (Ct. Comm. Pl. Aug. 19, 2013). On August 29, 2013, PCRA Counsel filed a PCRA Petition. Of note, this Petition is not found in the certified record. This Petition purportedly sought the recusal of the PCRA Judge and the reinstatement of Petitioner's appellate rights. On October 2, 2013, Judge Wogan denied Petitioner's request for recusal and granted Petitioner *nunc pro tunc* relief regarding his appellate rights. Petitioner filed a second 1925(b) statement. On December 19, 2013, the PCRA Court recommended that this second PCRA Petition be denied.

On appeal with his second PCRA Petition, Petitioner raised three issues: (1) did the PCRA Court display a fixed bias against Petitioner, (2) did the PCRA Court err in finding Petitioner's decision to reject a negotiated plea was knowing, voluntary, and intelligent when Trial Counsel failed to inform Petitioner of his potential sentence, and (3) did the PCRA Court err in finding Trial Counsel was not ineffective for failing to inform Petitioner of his potential sentence. *Comm. v. Watts*, 3157 EDA 2013, slip op. at 1 (Super Ct. Mar. 4, 2015). On March 4, 2015, the Superior Court denied this Petition. *Id.*

### d. Petitioner's Habeas Claims

Petitioner timely filed a federal habeas petition. (Pet.) Petitioner raised the following grounds for relief: (1) the Trial Court erred for failing to give an instruction to the jury on a lesser included offense charge; (2) the Trial Court violated Petitioner's rights by applying the Deadly Weapons Enhancement; (3) the Trial Court erred in its supplemental instruction regarding the recovery of co-Defendant's unrelated firearm; and (4) the Trial Court committed cumulative error. (Pet.) The Government responded that all claims were procedurally defaulted

and meritless. (Resp.) The Magistrate Court found all claims to be procedurally defaulted and meritless. (R&R.) Petitioner objected that claims one, two, and four were not procedurally defaulted, and that all claims had merit. (Objs.)

## II. Legal Standards

### a. Standard of Review

When objections are filed to the R&R of a Magistrate Judge, the District Court must review *de novo* those portions of the R&R to which objection is made. 28 U.S.C. §636(b)(1). The Court reviews those portions of the R&R to which objection were taken *de novo*. As for the portion of the R&R to which no objection was made, the Court reviews the R&R for clear error.

### b. Procedural Default

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241-66 ("AEDPA") deals with the right of all persons in state custody, or in federal custody, to file a petition in a federal court seeking the issuance of a writ of habeas corpus. In the context of a prisoner in state custody, if such a writ of habeas corpus is issued by a federal court, the prisoner will be released from such state custody on the grounds that certain rights accruing to that prisoner pursuant to the United States Constitution have been violated; habeas corpus motions pursuant to AEDPA are the only possible means of obtaining this type of relief from state custody. *Benchoff v. Colleran*, 404 F.3d 812 (3d Cir. 2005); *Coady v. Vaughn*, 251 F.3d 480 (3d Cir. 2001).

By means of AEDPA, Congress also created a series of intentionally restrictive gate-keeping conditions which must be satisfied for a prisoner to prevail in his petition seeking the issuance of a writ of habeas corpus. The strict AEDPA gate-keeping procedures were enacted by Congress in order to support the policy of creating finality with respect to state and federal

6

criminal prosecutions. One such gate-keeping procedure is the requirement of exhaustion. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State..." 28 U.S.C. § 2254(b)(1); *see also Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) (citing 28 U.S.C. § 2254(b)(1)) ("[A] district court ordinarily cannot grant a petition for a writ of habeas corpus arising from a petitioner's custody under a state court judgment unless the petitioner first has exhausted his available remedies in state court."). Petitioner must have "fairly presented" the federal habeas claims to the state courts. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Evans v. Court of Common Pleas, Delaware County, Penn.*, 959 F.2d 1227, 1231 (3d Cir. 1992) (citations omitted). Of note, if Petitioner raises the issue on direct appeal, Petitioner is not required to raise it again in a collateral state post-conviction proceeding. *Evans*, 959 F.2d at 1230.

"To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). A petitioner in Pennsylvania must appeal such claims to the Pennsylvania Superior Court. *Whitney v. Horn*, 280 F.3d 240, 250 n. 10 (3d Cir. 2002). Petitioner carries the burden of proving exhaustion. *Coady*, 251 F.3d at 488 (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

Where a claim was not exhausted in state court, and is now past the statute of limitations, it is said to be procedurally defaulted. To bring a procedurally defaulted claim in federal proceedings, Petitioner must demonstrate either (a) cause for the default and actual prejudice arising from the alleged violation of federal law, or that (b) failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

7

First, to establish the "cause" requirement, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). To establish the "prejudice" requirement, Petitioner must prove "not merely that the errors at...trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting this entire trial with error of constitutional dimensions." *Id.* at 193. Second, to establish a fundamental miscarriage of justice, Petitioner must demonstrate actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-32 (1995).

### c. Merits Review

Where Petitioner's claims were adjudicated on the merits in state court, the AEDPA deference standard applies to this Court's review of the merits determination. *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012). The AEDPA limits federal habeas review of state court judgments. *Werts*, 228 F.3d at 195. A petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). When a claim has been adjudicated on the merits in state court, federal habeas review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398-99 (2011).

III.    **Discussion**

      a.  **Petitioner's objections to the R&R's recommendation regarding Claim One are overruled. On *de novo* review, the Court finds that Claim One is procedurally defaulted, and meritless. The Court affirms and adopts the R&R and denies Petitioner's request for habeas relief under Claim One.**

Petitioner alleges that the Trial Court erred for failing to give a jury instruction on a lesser included offense of robbery as a second-degree felony.[1] (Pet. at 6.)

First, the Court finds that this claim is unexhausted, time-barred, and thus, procedurally defaulted. To exhaust a claim, a petitioner must "fairly present" his federal claims to state courts before bringing the claims to federal court. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995). To "fairly present" a federal claim, petitioner must have raised that federal claim's "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). It is not sufficient that "a somewhat similar state-law claim was made" before the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan*, 513 U.S. at 365-66. Some ways in which "petitions may communicate that they are asserting a federal claim without explicitly referencing specific portions of the federal constitution or statutes" include: "'(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts

---

[1] A person is guilty of robbery in the first degree "if, in the course of committing a theft, he...threatens another with or intentionally puts him in fear of immediate serious bodily injury..." 18 Pa.C.S.A. § 3701(a)(1)(ii), (b)(1). A person is guilty of robbery in the second degree "if, in the course of committing a theft, he...inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury." *Id.* at § 3701(a)(1)(iv), (b)(1).

that is well within the mainstream of constitutional litigation.'" *McCandless*, 172 F.3d at 261-62 (citing *Evans v. Ct. of Comm. Pl., Del. County, Pa.*, 959 F.2d 1227, 1232 (3d Cir. 1992)).

Petitioner raised a related, but different, issue on his direct appeal. Petitioner's state claim made no reference to constitutional or federal rights. (Pet'r's Br. on Direct Appeal, Nov. 12, 2009). On appeal, Petitioner raised the claim that "[t]he trial court erred in not giving an instruction to the jury as to Robbery as a second degree felony." (Pet'r's Direct App. 1925(b) Statement, Apr. 6, 2009 ¶ 4.) In his brief in support thereof, Petitioner argued that:

> The defendant is entitled to this charge where the evidence in the record would permit the jury to find rationally, the defendant guilty of the lesser included offenses, but not the greater included offense.

(Pet'r's Br. at 10.)  Neither Petitioner's 1925(b) Statement, nor his Brief in support thereof, allege any federal violation, or reference the federal Constitution or federal case law. In his Brief, Petitioner only cited state cases which consider state evidence law. *See Comm. v. Wood*, 475 A.2d 834 (1984) (citing exclusively state case law for its decision to vacate and remand a conviction on the basis that a reckless driving charge, in addition to the greater charge of reckless endangerment, should have been read to the jury); *Comm. v. Thomas*, 546 A.2d 116 (1988) (citing exclusively state case law for its decision to affirm lower court's refusal to read the robbery in the second degree charge where Petitioner simulated a gun during a robbery); *Comm. v. Sirianni*, 428 A.2d 629 (1981) (citing exclusively state case law for its holding affirming the lower court's decision to only provide an instruction on aggravated assault, and not simple assault). This claim is unexhausted. Because the claim is further time-barred, it is procedurally defaulted.

Assuming *arguendo* that Claim One was exhausted, the Court also finds that it is entirely meritless. In reviewing an exhausted claim, this Court may only grant habeas relief where the State court decision is contrary to "clearly established Federal law, as determined by the

10

Supreme Court of the United States" or is an unreasonable application of the facts in light of the evidence. 28 U.S.C. § 2254(d). The Superior Court applied state case law that is not contrary to clearly established federal law. In reaching its decision, the Superior Court relied upon state court case law. The Superior Court explained that the Superior Court reviewed the Trial Court's jury instructions for abuse of discretion. *Comm. v. Watts*, 619 EDA 2009, slip op. at 12 (Super Ct. Apr. 21, 2010) (citing *Comm. v. Baker*, 963 A.2d 495, 507 (Super. Ct. 2008)). The Superior Court stated that Petitioner was "not automatically entitled to have the jury instructed on second degree robbery simply because that charge constitutes a lesser included offense of the first degree robbery charge. A defendant is entitled to such an instruction only where the evidence in the record would permit the jury to find, rationally, the defendant guilty of the lesser included offense but not the greater offense." *Id.*, slip op. at 13 (citing *Comm. v. Thomas*, 376 Pa.Super. 455, 461 (Super. Ct. 1988)).

*Baker* and *Thomas* are in line with current Supreme Court precedent. The Supreme Court has held that in capital cases, the judge must give the jury an instruction on a lesser-included murder charge. *Beck v. Alabama*, 447 U.S. 625 (1980). The Supreme Court has never expanded its holding beyond capital cases. *See Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("Outside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error. To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief."). Thus, the Superior Court's holding was not an unreasonable application of federal law.

The Superior Court's holding was also not an unreasonable application of the facts in this case. During the trial, the victim testified that "Not this defendant [Petitioner] but the other defendant [Hughes] said, young boy, don't try to make a scene, I got the burner waiting on the

11

side of my hip. So I will shoot you in front of everybody; I don't care." (N.T. 11/13/08, at 46.)
The threat of being shot with a gun is obviously a threat of *serious* bodily injury, not simply
bodily injury. "It would be both irrational and contrary to the aims of the statute for the jury to be
permitted to find appellant, who calculated that his victims would be in mortal fear of a deadly
weapon, guilty only of the lesser offense of threatening mere bodily injury, but not guilty of
threatening serious bodily injury." *Thomas*, 546 A.2d at 461. The Court finds that the Superior
Court reasonably applied federal law and the facts of this case when ruling that Petitioner's claim
that the Trial Court erred by failing to instruct the jury on the lesser-included offense of second
degree robbery was meritless.

 In conclusion, finding this claim procedurally defaulted, and in the alternative, meritless,
the Court overrules Petitioner's objections, affirms and adopts the Report and Recommendation,
and denies Petitioner's request for habeas relief under Claim One.

> **b. Petitioner's Objections to the R&R's recommendation regarding Claim Two
> are affirmed in part. On *de novo* review, the Court finds that this claim is
> exhausted and has merit.**

 Petitioner alleges that the Trial Court violated his constitutional rights by applying the
deadly weapon enhancement. (Pet. at 7.) The deadly weapon enhancement applies "[w]hen the
court determines that the offender possessed a deadly weapon during the commission of the
current conviction offense." 204 Pa. Code § 303.10. "[T]he term 'possessed' means on the
defendant's person or within his immediate physical control." 42 Pa.C.S. § 2154(b). The deadly
weapons enhancement applies to each conviction for which a deadly weapon is possessed or
used. *Id.*

 The Court added a deadly weapon enhancement possession matrix to the robbery
conviction. However, because it was a second strike, the guideline range, even with the deadly

weapon charge, was lower than the mandatory minimum caused by the second strike. The Court imposed the mandatory minimum of 10 to 20 years on the robbery conviction. The Court did not apply the second strike rule to the criminal conspiracy conviction. However, the Court did apply the deadly weapon enhancement to the criminal conspiracy conviction. The enhancement put the range at 45 to 57 months, plus or minus 12, due to Petitioner's offense gravity score of 9 and prior record score of 4; the Court imposed a range of 66 to 132 months. Petitioner's 66 to 132 month sentence on the conspiracy was the only part affected by the application of this guideline. The Court only addresses that sentence herein.

Petitioner seems to argue that, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the enhancement was not proper because the jury did not expressly find that either he or his co-defendant possessed a firearm while committing the robbery. First, the Court finds that this claim is exhausted. In so finding, the Court affirms Petitioner's objection thereto and declines to adopt the Report and Recommendation on this matter. Petitioner brought this claim before the Superior Court on direct appeal. In his 1925(b) Statement on Direct Appeal, Petitioner alleged that the Trial Court "erred in applying the deadly weapon enhancement provision of the sentence guidelines because the defendant was acquitted of all weapons charges in the case and the evidence in the case did not show beyond a reasonable doubt that a deadly weapon was used during the incident." (Pet'r's Direct App. 1925(b) Statement, Apr. 6, 2009.) As with Claim One, in Claim Two, Petitioner did not explicitly refer to federal case law or the federal Constitution.

However, in contrast to Claim One, in Claim Two Petitioner relies on "state cases employing constitutional analysis in like fact situations" and alleges "a pattern of facts that is well within the mainstream of constitutional litigation." *See Evans,* 959 F.2d at 1232.  Petitioner's cited state case law directly addressed federal constitutional issues

13

surrounding this claim. *See Comm. v. Dickson*, 918 A.2d 95 (2007) (citing *Apprendi*); *Comm. v. Bowen*, 612 A.2d 512 (1992) (addressing the constitutionality of a weapon enhancement provision that does not require the establishment of a nexus between possession, weapon, and the crime). Furthermore, Petitioner's language clearly implicates *Apprendi*. *Apprendi* held that any factors which enhance sentences beyond statutory maximums, excepting proof of a prior conviction, must be proved to a jury beyond a reasonable doubt. 530 U.S. at 498. Petitioner directly argues that this "beyond a reasonable doubt" standard was not met. The Court finds this claim properly exhausted.

   In reviewing an exhausted claim, this Court may only grant habeas relief where the State court decision is contrary to "clearly established Federal law, as determined by the Supreme Court of the United States" or is an unreasonable application of the facts in light of the evidence. 28 U.S.C. § 2254(d). The Superior Court held that the "standard of proof governing the applicability of the deadly weapon enhancement is a preponderance of the evidence." *Comm. v. Watts*, 619 EDA 2009, slip op. at 29 (Super Ct. Apr. 21, 2010) (quoting *Comm. v. Ellis*, 700 A.2d 948, 959 (Super. Ct. 1997) (citing *Comm. v. McKeithan*, 350 Pa. Super. 160 (1980))).[2] The Superior Court then found that "under the preponderance of the evidence standard as required by

---

[2] The Court notes that the Superior Court's analysis about the Trial Court's factual findings during sentencing came after it had already rejected the Trial Court's stated reason for applying the deadly weapon enhancement: the jury's verdict;

> It is conceded that Appellant had no firearm on his person during the commission of the offense. The Commonwealth and the trial court focus their arguments in favor of the application of the deadly weapon enhancement guideline on the fact that the firearm purportedly on the person of Hughes was within Appellant's "immediate physical control."...Appellant's central point [is] that there is insufficient evidence to support the finding that **either** co-defendant possessed a firearm. The trial court found that "the jury believed [Hughes] to be carrying a firearm since they found [Appellant] guilty of conspiracy and first degree robbery." This is the result of circular reasoning...Appellant's conviction on the robbery charge is not dependent upon the presence of a firearm. The threat intended to make the victim believe that a firearm was present was sufficient to sustain the charge. With Appellant's acquittals on the PIC and VUFA charges, there is nothing in the jury verdict that necessarily implicates the finding that a firearm was possessed by either Appellant or Hughes. The trial court's reliance on the jury verdict...is misplaced.

*Id.*, slip op. at 28-29.

*Ellis*...[t]he trial court's application of the deadly weapon enhancement was therefore correct." *Id.*, slip op. at 29. Specifically, the Superior Court found that the victim's testimony that the co-defendant told the victim that he, the co-defendant, had a "burner" and would shoot the victim, and that the victim testified that he witnessed a "bulge" on the co-defendant's hip resembling a firearm, and that Petitioner was near and working in cahoots with the co-defendant, supported a finding, upon a preponderance of the evidence standard, that a firearm was within Petitioner's immediate physical control. *Id.*, slip op. at 29.

Petitioner appears to argue that the Superior Court's application of *Ellis* and *McKeithan* is contrary to federal law, namely, *Apprendi*'s beyond a reasonable doubt requirement. Petitioner's argument fails because *Apprendi* only applies to factors that raise sentences above statutory mandatory maximums, and mandatory sentencing guidelines. *See Blakely v. Washington*, 542 U.S. 296 (2004). As the sentencing guidelines in Pennsylvania are only advisory, the statutory maximums are the guideposts for application of *Apprendi*. *Comm.v. Yuhasz*, 592 Pa. 120, 125 (2007).  In Pennsylvania, the statutory maximum for criminal conspiracy for robbery is 240 months imprisonment. 18 Pa.C.S. § 3701. The Trial Court sentenced Petitioner to 66 to 132 months in prison, inclusive of the deadly weapon enhancement, for criminal conspiracy. Thus, the application of the deadly weapon enhancement pursuant to *Ellis* and *McKeithan* was not contrary to *Apprendi*.

The final question for the Court is whether or not the Superior Court unreasonably applied the facts in determining that the Trial Court correctly found that circumstantial evidence supported, by a preponderance of the evidence, a finding that Petitioner had a firearm within his immediate physical control. The Court reviews the relevant facts. The victim testified that:

> MS. HEINE [PROSECUTOR]: Now during the course of your second encounter with the defendant and the co-defendant, were either of them armed with any weapons?

\*\*\*

MR. HARRIS [VICTIM]: Well, they didn't pull it out nothing, but not this guy, but the other guy, on the side of his waist, you could see like something was there...If you look on the side of my hip, you could tell this is a cell phone casing. If I put this over it, you could still tell there is something there. So that is what I seen, so I figured it was a gun.

\*\*\*

MS. HEINE: Why did you believe it might be a gun, Mr. Harris?

\*\*\*

MR. HARRIS: Because if they was taking my money, that would be logical, the person would have a gun, that is logical.

\*\*\*

MS HEINE: Mr. Harris, did anybody say anything to you during the second encounter to make you think that one of them might have a gun?

MR. HARRIS: Not this defendant, but the other defendant, said, young boy, don't try to make a scene, I got the burner waiting on the side of my hip. So I will shoot you in front of everybody; I don't care.

\*\*\*

MS. HEINE: Burner...what did that mean to you?

MR. HARRIS: A gun.

\*\*\*

MS. HEINE: Did the co-defendant gesture at all towards his waist area when he said that to you?

MR. HARRIS: No.

\*\*\*

MS. HEINE: Why did you take out your wallet and give it to the defendant?

MR. HARRIS: Because as soon as he mentioned the burner, I was like, well, it is no reason for me to even try anything stupid. So I just gave it up and that is it.

(N.T. 11/13/08, at 44:3-50:23.)

MR COTTER [DEFENSE COUNSEL]: [Y]ou never saw a gun; is that correct?

MR. HARRIS: That is correct.

(N.T. 1/13/08, at 83:19-21.)

MR. COTTER: Was any weapon found on him [Petitioner] or his person?

OFFICER MITCHELL YANAK [ARRESTING OFFICER]: No.

***

MR. COTTER: [In the description of the incident], it says point of simulating gun?

OFFICER YANAK: Yes, simulated gun.

(N.T. 1/13/08, at 104:11-105:15.) The victim identified Petitioner in a photo array. (N.T. 1/13/08, at 75:13-21.)

Thus, in reviewing the evidence, the Court finds that it is undisputed in the factual record that Petitioner did not have a firearm on his person, that no firearm related to this case was ever recovered, and that co-defendant never brandished a firearm. The Court further notes that the jury acquitted Petitioner of any weapons related charge. The Court remains concerned that the Superior Court unreasonably applied the factual record in determining that the Trial Court found, by a preponderance of the evidence that a firearm was within Petitioner's immediate control.

Given the Court's concerns that the factual record was unreasonably applied to the facts, the Court grants an evidentiary hearing as to Claim Two.

17

     **c.  Petitioner's Objections to the Report and Recommendation are affirmed. On**
       ***de novo* review, the Court finds that this claim is exhausted. The Court**
       **grants an evidentiary hearing on this claim.**

Petitioner alleges that the Trial Court erred in its jury instruction regarding the recovery

of a firearm in the co-defendant's possession firearm incident to an unrelated arrest. (Pet. at 8.)

The Court recounts the factual basis of this claim. In his closing argument, Trial Counsel stated:

> And this is also important; Dante Hughes, somehow, the other guy that they allege was
> involved, was arrested along the way sometime later. Don't you think if they would have
> found a gun from Dante Hughes, because the Commonwealth is going to say, well, Dante
> Hughes had it, that that gun would have been here today?...There was never any gun
> found in this case; none, none, none. That is another reason to believe that there is no gun
> in this case; that a bulge is a bulge....

(N.T. 11/14/08 at 45:16-46:9.) At sidebar after Trial Counsel's closing, the prosecutor raised this

concern:

> MS. HEINE: During counsel's closing, he made a big deal about the fact that no gun was
> recovered from Dante Hughes during his arrest and that is not true. A gun was recovered
> from Dante Hughes pursuant to his arrest. What happened was, he was involved in a
> second robbery where a rifle was used; he was arrest almost immediately after that and a
> rifle was recovered...And I didn't introduce evidence of that because I didn't know how
> big the rifle was and since I wasn't entirely sure of that, I just didn't do it...I think I
> should be permitted to tell the jury in my closing that a gun was recovered.

> MR. COTTER: There was no evidence of that, Judge.

> MS. HEINE: Well, you shouldn't have commended.

> MR. COTTER: Well, the thing is, I didn't know.

> THE COURT: Wow.

> MR. COTTER: Why didn't somebody tell me ahead of time?

> THE COURT: Well, I didn't know, either. Maybe what I should do is just say that, keep
> this as neutral as possible, that there was not a handgun recovered from Dante Hughes,
> there was a rifle...
> ***

> MR. COTTER: That is going to be extremely prejudicial. There is a bulge.

> MS. HEINE: This is a .22 caliber rifle.

THE COURT: I don't think it hurts your client, but we can't leave them [the jury] with an impression that is not true, and, I guess –

MR. COTTER: It is true as far as the evidence that came in. I wasn't told a rifle was recovered from Dante Hughes.

\*\*\*

THE COURT: I think I should just say there was no handgun recovered from Dante Hughes, but there was a rifle. I mean, no one is going to think a rifle was used in this crime....

MR. COTTER: ...I object to it...

\*\*\*

MS. HEINE: The rifle was not recovered from Dante Hughes's person; it was from where he was hiding. So a gun was recovered pursuant to his arrest.

(N.T. 11/14/08, at 54:25-59:23.) The Court stated the following to the jury:

Ladies and gentlemen, you remember what I told you, that closings and even questions by attorneys may be helpful guides, but they don't constitute evidence. In this case – I should say in this situation, the co-defendant, Dante Hughes, there was no handgun recovered from Dante Hughes, that is determined that way and that is correct. There was, however, a rifle that was recovered from Dante Hughes. Dante Hughes is not on trial here, but you heard him mentioned as a co-defendant in this case. So I think I have an obligation to make sure that you know that there are no misimpressions left with you. And no one consciously is misleading you. These things happen during trials.

(N.T. 11/14/08, at 61:-8-22.) Trial Counsel made a formal motion for a mistrial due to this

instruction, which was denied. (N.T. 1/14/08, 85:11-87:11.)

This claim is properly exhausted. In his 1925(b) Statement on direct appeal, Petitioner

claimed that:

[t]he trial court erred in telling the jury after the evidence in the case was closed and after the defense counsel closing argument, that a rifle was recovered from Dontay Hughes, who was a co-defendant of the defendant who was not on trial. There was no allegation or evidence that a rifle was used in this case. Also evidence is to come from witnesses not the trial court. The trial court also erred in not allowing the defense counsel to comment upon this evidence that the trial court stated to the jury and further erred by not granting the defense motion for mistrial. The trial court denied the defendant his State and Federal Constitutional Rights to confront the witnesses and evidence against him.

(Pe't'r's Direct App. 1925(b) Statement ¶ 6.)

In reviewing an exhausted claim, this Court may only grant habeas relief where the State court decision is contrary to "clearly established Federal law, as determined by the Supreme Court of the United States" or is an unreasonable application of the facts in light of the evidence. 28 U.S.C. § 2254(d). The Superior Court found that the instruction was an abuse of discretion, but was harmless. *Id.*, slip op. at 20-24. The Superior Court explained that the Commonwealth "carried the burden of proving beyond a reasonable doubt that the error was harmless in that there was no reasonable probability that the error contributed to the verdict." *Id.*, slip op. at 23 (citing *Comm. v. Wood*, 637 A.2d 1335, 1351 (Super. Ct. 1994)).This standard comports with federal law. In applying *Wood*, the Superior Court found that:

> [w]hile the irrelevant factual instruction had the potential to impact the jury relative to the gun possession charges and the robbery charge, as was noted earlier, Appellant was acquitted of the PIC and VUFA charges, rendering the trial court's charge harmless. Also, as we noted earlier, the robbery conviction was not dependent upon the actual presence of the firearm, but rather upon the threat posed by making the victim believe that a firearm was present. The evidence of that threat was direct, clear, and uncontradicted. Additionally the circumstances of Appellant's flight and apprehension and his subsequent phone calls to the victim admitting to the robbery provide overwhelming evidence of Appellant's guilt such that the jury was not prevented from weighing the evidence and rendering a true verdict.

*Id.*, slip op. at 23-24. Simply put, the Superior Court found that the error was harmless since Petitioner was acquitted of the weapons-specific charges.

As an overarching matter, the Court queries whether this evidence could have been introduced to the jury, at any stage of the trial, period. The Court is concerned that there was no documentation to support the claim that a weapon was recovered from the co-defendant, there was no evidence showing a chain of control of said weapon, no officer who testified as to the veracity of these statements, nothing. Petitioner had no opportunity to cross-examine the record keeper, or make any statement regarding this "evidence." The Court believes that there is a

colorable claim that Petitioner's Sixth Amendment rights were violated by the introduction of this evidence.

Given the gravity of this error, the Court fears that cabining the impact of the "curative" instruction to the weapons-specific charges overlooks the contamination potential of this instruction to Petitioner's various convictions. This "curative" instruction could have infected more than the weapons-specific charges. The Court is concerned with three main implications: the potential for the curative instruction to bolster the victim's testimony and the potential for the curative instruction to inappropriately show propensity on the part of the co-defendant.

First, Petitioner's convictions for robbery in the first degree, and criminal conspiracy thereto, hang on the victim's testimony. It is only through the victim's testimony that there is any evidence that Petitioner's co-defendant threatened the victim with a hidden "burner," and that the victim saw a "bulge" on the co-defendant that he believed hid a gun. As previously addressed, no firearm related to this incident was ever recovered. There was no other evidence that Petitioner or his co-defendant threatened the victim with a gun except from the victim's testimony. The Court fears that the Trial Court's introduction of evidence that co-defendant was someone who owned at least one rifle could have bolstered the jury's weighing of the victim's testimony as to the "burner" threat and the "bulge."

Second, the Court is concerned that this instruction introduced evidence that would never have been admissible as it inappropriately showed bad acts, and propensity, unrelated to the crime charged. As previously stated, Petitioner's convictions for robbery in the first degree, and criminal conspiracy thereto, are entirely based on the victim's testimony about the co-defendant's threatening language and "bulge." Evidence that the co-defendant was the type of person who possessed a gun, and was arrested for an unrelated crime, not only bolster the

victim's testimony but also show propensity for the crime with which he was charged as Petitioner's co-conspirator.

Third, the Court queries whether this instruction so undermined Trial Counsel's credibility in the eyes of the jury that Petitioner's right to a fair trial was wholly abrogated.

Because of the substantial risk that this instruction potentially undermined Petitioner's right to a fair trial, the Court grants an evidentiary hearing on Claim Three.

> **d. Petitioner's Objections to the R&R's recommendation regarding Claim Four are overruled. On *de novo* review, the Court finds that this claim is procedurally defaulted and meritless. The R&R is affirmed.**

In Claim Four, Petitioner alleges that "the state court committed an error of Constitutional magnitude when it allowed [Petitioner's] conviction and illegal sentence to stand despite the obvious Constitutional violations and trial court bias." (Pet.) The Magistrate Court found this claim, so construed, to be procedurally defaulted and meritless. (R&R at 15-16.)

This Court agrees that Petitioner failed to raise this Claim before the Superior Court on direct appeal. In his PCRA Petition, Petitioner did raise a judicial bias claim, but the Superior Court dismissed said claim as untimely. *Comm. v. Watts*, 3157 EDA 2013, slip op. at 2 (Super. Ct. 2015). The Superior Court's decision rested on an independent and adequate state procedural rule. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred." *Coleman*, 501 U.S. at 750. Thus, Petitioner never brought the claim, as alleged here, before the Superior Court. It is procedurally defaulted. Further, to the extent that Petitioner did bring the judicial bias portion of this claim, that portion is also procedurally defaulted. The Court overrules Petitioner's objections, adopts and affirms the Report and Recommendation, and denies Petitioner's request for habeas relief on Claim Four.

**e. Petitioner is not granted leave to amend his habeas Petition.**

Petitioner asks for leave to amend his habeas petition to argue a new claim that the Trial Court denied Petitioner his state and federal constitutional rights to confront witnesses and evidence against him. (Dkt No. 15.) Petitioner does not explain what evidence, or which witnesses, he was not able to confront. He provides no context for this claim. This request is denied as untimely filed.

Furthermore, the only conceivable context for this claim is encompassed in Claim Three. In his state habeas petition as to Claim Three, Petitioner alleged that "[t]he trial court denied the defendant his State and Federal Constitutional Rights to confront the witnesses and evidence against him." (Pet'r's Direct App. 1925(b) Statement ¶ 6.) To the extent that Petitioner is alleging that same issue, it has already been raised in Claim Three. The Court is allowing Claim Three to proceed to an evidentiary hearing. To the extent that Petitioner is alleging something beyond the context of Claim Three, such a claim would be procedurally defaulted. No such claim was raised before the Superior Court.

In conclusion, Petitioner's Motion is denied as untimely, and alternatively, either mooted by Claim Three or procedurally defaulted.

## IV.   Conclusion

Petitioner's request for an evidentiary hearing is granted as to Claim Two and Claim Three.[3] Petitioner's requests for relief as to Claim One and Claim Four are denied. An Evidentiary Hearing shall be scheduled forthwith. To assist Petitioner at the Evidentiary Hearing

---

[3] Because Petitioner failed to make a substantial showing of the denial of any constitutional right, the Court finds that reasonable jurists would not disagree with this Court's holding, therefore, a certificate of appealability shall not issue as to the Court's denial of Claims One and Four. *See, e.g.*, 28 U.S.C. § 2253(c)(2); *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996).

and throughout the remainder of this matter, the Court appoints counsel pursuant to the attendant

Order.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. DARNELL JONES, II, J.